CASE NO. 23-5071

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**UNITED STATES**

        **Plaintiff-Appellee,**

**V.**

**SALVADOR JONES**

        **Defendant-Appellant.**

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

**BRIEF OF APPELLANT**

| | |
|---|---|
| Christopher Bazeley, Esq. | Office of the U.S. Attorney for |
| Attorney at Law | Western District of Kentucky |
| 9200 Montgomery Rd, Suite 8A | 717 West Broadway |
| Cincinnati, Ohio 45242 | Louisville, Kentucky 40202 |
| (513) 748-5092 | (502) 582-5911 |
| bazeleyc@bazeleylaw.com | Attorney for Appellee |
| CJA Attorney for Appellant | |

# TABLE OF CONTENTS

|   | Page |
|---|---|
| TABLE OF CONTENTS………………………………………….. | i |
| TABLE OF AUTHORITIES…………………………………….… | ii |
| STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION………………………………….… | 1 |
| STATEMENT OF THE ISSUE PRESENTED……………………… | 1 |
| STATEMENT OF THE FACTS AND CASE………………………. | 2 |
| SUMMARY OF THE ARGUMENT……………………………….… | 3 |
| STANDARD OF REVIEW…………………………………………... | 3 |
| ARGUMENT………………………………………………………. | 4 |
| CONCLUSION……………………………………………………. | 14 |
| CERTIFICATE OF COMPLIANCE………………………………. | 15 |
| CERTIFICATE OF SERVICE…………………………………….. | 15 |

## TABLE OF AUTHORITIES
Page

**Supreme Court Cases:**

*Crist v. Bretz* (1978), 437 U.S. 28, 98 S. Ct. 2156 (1978)…………….. 13

*Jackson v. Virginia* (1979), 443 U.S. 307, 99 S. Ct. 2781…………….. 4

*Crawford v. Washington* (2004), 541 U.S. 36, 124 S. Ct. 1354……….. 6

**Sixth Circuit Court of Appeals Cases:**

*U.S. v. Ayala*, 755 Fed. Appx. 499 (6th Cir. 2018)………………….. 10, 11

*U.S. v. Collins*, 799 F.3d 554 (6th Cir. 2015)………………………. 10, 12

*U.S. v. Sandals*, 469 F.3d 508, 513 (6th Cir. 2006)…………………. 4 – 6

**Other Circuit Court Cases:**

*U.S. v. Jackson*, 636 F.3d 687 (5th Cir. 2011)……………………….. 7, 10

*U.S. v. Kaley*, 760 Fed. Appx. 667 (11th Cir. 2019)………………….. 7 – 9

*U.S. v. Little Dog*, 398 F.3d 1032 (8th Cir. 2005)……………………… 12

*U.S. v. Padilia*, 639 F.3d 892 (9th Cir. 2011)…………………....… 13

*U.S. v. Turrietta*, 696 F.3d 972 (10th Cir. 2012)……………………….. 14

**Statutes:**

18 U.S.C. 2113…………………………………………………………. 4

**Rules of Court:**

Fed. R. Evid. 606……………………………………………………..6

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is a federal criminal prosecution in the U.S. District Court for the U.S. District Court for the Western District of Kentucky. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and Fed. R. Crim. P. 18.

This is an appeal as of right, taken pursuant to Fed. R. App. P. 3 and 4, from a final order or judgment that disposes of all parties' claims from the district court to the Sixth Circuit Court of Appeals with jurisdiction over this district. Jurisdiction is proper under 28 U.S.C. § 1291 and under 18 U.S.C § 3742. The Judgment in a Criminal Case was filed on January 24, 2023, and Appellant filed a timely notice of appeal on January 26, 2023. [R. 92, Sentencing Entry; R. 94, Notice of Appeal].

## STATEMENT OF THE ISSUES PRESENTED

I. JONES' CONVICTIONS WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE TO SHOW THAT THE BANKS WERE INSURED BY THE FDIC.

II. THE DISTRICT COURT ERRED WHEN IT OVERRULED JONES' MOTION TO STRIKE THE TESTIMONY OF DETECTIVE O'DANIEL.

III. THE DISTRICT COURT ERRED WHEN IT ALLOWED THE GOVERNMENT TO PLAY RECORDINGS OF PRIVLEDGED COMMUNICATIONS BETWEEN JONES AND HIS SPOUSE AT TRIAL.

IV. THE DISTRICT COURT ERRED WHEN IT OVERRULED JONES' MOTION FOR A MISTRIAL AFTER PROCEEDING WITHOUT SWEARING IN THE JURY.

## STATEMENT OF THE FACTS AND CASE

On August 3, 2021, Salvador Jones was indicted on five counts of bank robbery in violation of 18 U.S.C. 2113. [R. 1, Indictment, PageID# 1-5]. The charges arose from a string of robberies occurring at branch offices of U.S. Bank and Fifth Third Bank in the Louisville, Kentucky area.

Jones pled not guilty to the charges and the matter was tried before a jury from October 3 to October 7, 2022. The jury found Jones guilty of all charges. [R. 70, Jury Verdict, PageID# 330-35].

The district court imposed a sentence of 210 months of incarceration and three years of supervised release. [R. 92, Judgment and Sentencing Order, PageID# 639-46]. Jones filed a timely notice of appeal on January 26, 2023. [R. 94, PageID# 651-52].

## SUMMARY OF THE ARGUMENTS

I. The government failed to produce legally sufficient evidence to show that the banks Jones allegedly robbed were insured by the FDIC, an element to the federal offense of bank robbery.

II. The district court erred when it overruled Jones' motion to strike the testimony of Detective O'Daniel when the district court, sua sponte, halted his direct testimony and prevented cross-examination on the same day after the witness' testimony became confusing.

III. The district court erred when it allowed the government to play a recording of a private and privileged conversation between Jones and his wife.

IV. The district court erred when it overruled Jones' motion for a mistrial after realizing that it began the trial, namely opening statements, without swearing in the jury.

## STANDARD OF REVIEW

I. The standard of review on appeal for an insufficient-evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S. Ct. 2781.

II. This court reviews a district court's decision to admit evidence over an objection as an abuse of discretion. *U.S. v. Jackson*, 636 F.3d 687 (5th Cir. 2011).

III. In reviewing a district court's evidentiary determinations, this court reviews a district court's conclusions of law de novo and factual determinations that underpin the legal conclusion for clear error. *United States v. Collins*, 799 F.3d 554 (6th Cir. 2015).

IV. Whether a district court erred in proceeding with a jury trial without swearing the jury is a question of law that this court reviews de novo. *U.S. v. Little Dog*, 398 F.3d 1032 (8th Cir. 2005).

# ARGUMENT

I. JONES' CONVICTIONS WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE TO SHOW THAT THE BANKS WERE INSURED BY THE FDIC.

Jones' convictions are not supported by sufficient evidence that the banks were insured by the Federal Deposit Insurance Company (FDIC). The standard of review on appeal for an insufficient-evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S. Ct. 2781.

One of the elements required to convict on the offense of bank robbery is that the deposits of the financial institution robbed must have been insured by the FDIC <u>at the time of the robbery</u>. 18 U.S.C. § 2113; *U.S. v. Sandals*, 469 F.3d 508, 513 (6th Cir. 2006). The government attempted to satisfy that burden through the testimony of bank employees and through certified records.

First, the government presented the testimony of Dikesha Kinnison, an employee at the Dixie Highway branch of U.S. Bank. Her testimony was limited to stating that there were small, black signs posted in the bank that

4

said "FDIC" but could not state what the signs said verbatim. [R. 113, Trans. Trial Vo. 3A, PageID# 1076]. She also conceded that she had no knowledge of the process required to obtain the signs, when the bank applied for FDIC certification, or whether the certification was current. [*Id.*, PageID# 1177].

Justin Miracle, the Branch Manager for the Breckinridge Road branch of U.S. Bank, testified that his bank was insured by the FDIC. [R. 113, Trans. Trial Vol. 3A, PageID# 1112]. However, he also conceded that he had no firsthand knowledge of the bank's application for FDIC certification and only obtained his knowledge through reviewing internal reports. [*Id.*, PageID# 1114]. Cynthia Mulhull, another U.S. Bank employee, testified generally that FDIC insurance means that "our money in a bank is insured up to a certain amount." [R. 108, Trans. Trial Vol. 3B, PageID# 793].

None of the witnesses had any experience with managing their bank's FDIC insurance accounts. None of the witnesses testified that the FDIC insurance was current at the time of the robberies. Furthermore, this court has held that an employee's knowledge of the presence of FDIC stickers combined with unfounded testimony that the bank was insured is insufficient to support a conviction for robbery. *Sandals*, 469 F.3d at 514. As a result,

5

the testimony is not sufficient to show that the banks were insured by the FDIC at the time of the robberies.

Second, it is axiomatic that courts do not convict by affidavit. *Sandals*, 469 F.3d at 515 (*citing Crawford v. Washington* (2004), 541 U.S. 36, 50-51, 124 S. Ct. 1354). Here, the government attempts to do essentially the same thing – convict by certificate.

The government provided certificates showing when each of the banks obtained FDIC insurance. The district court admitted those records, over Jones' objection, as an exhibit outside of presence of the jury under Fed. R. Evid. 606(6). [R. 113, Trans. Trial Vol. 3A, PageID# 1118, 1144].

In *Sandals*, this court held that it was reversible plain error to admit an affidavit to show that a bank's FDIC insurance was in place at the time of the alleged robbery. *Id*., at 516. This court noted that the framers of the constitution would not have allowed a criminal conviction based on an out of court statement where the witness was available and the defendant had not had an opportunity to cross examine. *Id*., at 515-16.

Here, Jones had no opportunity to cross examine anyone about the FDIC certificates. A witness was available and the government offered to call them to testify regarding the certificates. [R. 113, Trans. Trial Vol. 3A, PageID# 1144]. The district court declined the offer. [R. 108, Trans. Trial

6

Vol. 3B, PageID# 749]. By refusing the government's offer the district court eliminated any opportunity Jones had to question the validity of the records and the bank's current status.

The government used the district court's decision that the records were self-certifying under Fed. R. Evid. 902(4) to suggest to the jury that they were demonstrative. [R. 108, Trans. Trial Vol. 3B, PageID# 749]. Jones was prejudiced in that the government argued at closing that the district court would not have allowed the certificates in if they were not valid. [R. 115, Trans. Trial Vol. 5, PageID# 1446].

Even viewing the evidence in a light most favorable to the government, the evidence is insufficient to support a finding that banks were insured by the FDIC at the time of the robberies.

II. THE DISTRICT COURT ERRED WHEN IT OVERRULED JONES' MOTION TO STRIKE THE TESTIMONY OF DETECTIVE O'DANIEL.

This court reviews a district court's decision to admit evidence over an objection as an abuse of discretion. *See e.g. United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011). The Sixth Amendment's right of confrontation includes the right of cross-examination. *See e.g U.S. v. Kaley*,

7

760 Fed. Appx. 667, 679 (11th Cir. 2019).  In an unpublished case, the Eleventh Circuit succinctly summarized that right in a criminal matter when it held that "[t]he purpose of cross-examination, of course, is typically to impeach or discredit the witness, particularly where the witness has an incentive to cooperate with the government.  [The Eleventh Circuit] said that "[w]hat counts is whether the [defendant may show that the] witness may be shading his testimony in an effort to please the prosecution." *Id*., at 679-80.

Here, the district court *sua sponte* interrupted O'Daniel's direct testimony when it felt that it became "very hazy."  [R. 77, Trans. O'Daniel Vol. I, PageID# 421].  The interruption occurred after previously warning the prosecutor that she needed to help her witness "sort out" his testimony and its own efforts to clarify O'Daniel's testimony regarding computer files. [*Id*., PageID# 417, 420].

Jones objected to stopping the testimony.  He argued that the jury should be able to observe Detective O'Daniel's confusion and uncertainty. [R. 77, Trans. O'Daniel Vol. I, PageID# 422; R. 83, Trans. Daubert, PageID# 497].  As concisely expressed in *Kaley, supra*, Jones' right to discredit a government witness, here with confusing testimony, is exactly the purpose of cross examination and the district court denied him that opportunity.

The district court justified the interruption by stating that it wanted a hearing to talk "in plain English outside the earshot of the jury about what he knows and what he doesn't know." [R. 77, Trans. O'Daniel Vol. I, PageID# 421]. In other words, it wanted to give the government a chance to "clean up" O'Daniel's testimony and eliminate confusion.

A district court may only limit cross examination after a defendant has already had an opportunity to sufficiently cross examine the witness. *See Kaley.*, 760 Fed. App. at 680. Jones had not had the chance to engage in "sufficient" cross examination before the district court's intervention. *See Id.* While the district court offered to allow Jones to cross examine Detective O'Daniel before halting his testimony, it failed to actually provide that opportunity. [R. 77, Trans. O'Daniel Vol. I, PageID# 421].

While Jones was eventually able to cross examine Detective O'Daniel two days later, he was denied an opportunity to capitalize on his confusing and "hazy" testimony to discredit him. In contrast, the government had two days to think of ways to rehabilitate and clarify its witness' testimony on direct examination. [R. 75, Trans. O'Daniel Vol. II, PageID# 351-64]. Jones predicted that inevitable result during the *Daubert* hearing. [R. 83, Trans. Daubert, PageID# 497]. Even a casual read of Detective O'Daniel's

9

testimony from October 4 compared to that of October 6 shows that his testimony was much more cogent and concise.

The district court erred in denying Jones' motion to strike the testimony of Detective O'Daniel and that error was prejudicial to Jones. Had the district court properly granted that motion, the government's remaining evidence placing Jones at the scene of the bank robberies would have been insufficient to support a conviction. *See Virginia, supra*.

III. THE DISTRICT COURT ERRED WHEN IT ALLOWED THE GOVERNMENT TO PLAY RECORDINGS OF PRIVLEDGED COMMUNICATIONS BETWEEN JONES AND HIS SPOUSE AT TRIAL.

In reviewing a district court's evidentiary determinations, this court reviews a district court's conclusions of law de novo and factual determinations that underpin the legal conclusion for clear error. *See e.g. U.S. v. Collins*, 799 F.3d 554, 582 (6th Cir. 2015). The district court misapplied the law and clearly erred in applying the evidence.

Jones objected to the government's playing the recordings of two telephone calls he made to his wife while incarcerated as a violation of the spousal communication privilege. [R. 108, Trans. Trial Vol. 3B, PageID#

799; R. 115, Trans Trial Vol. V, PageID# 1275]. A communication between spouses is privileged if the parties are married; the communication was limited to them; and it was made in confidence. *U.S. v. Ayala*, 755 Fed. Appx. 499, 507 (6th Cir. 2018). Similar to *Ayala*, there is no dispute that Jones was married to his wife at the time.

In *Ayala*, this court held that a phone call from an inmate to his wife was not confidential when the record showed that the calls were made on a speakerphone in the presence of police officers and that he was on notice, through signs posted in the jail, that all inmate phone calls were recorded. *Id*., at 507-08.

The district court here overruled Jones' objection based on its finding that there was a lack of confidentiality. [R. 109, Trans. Trial Vol. 4A, PageID# 836]. However, the record does not show how Jones would have been advised that his phone call would have been monitored or recorded. The audio tapes were introduced through Detective Dean. Unlike the background testimony in *Ayala*, he did not provide any background testimony as to whether there were signs stating that calls would be recorded in the jail, whether the call was made on speakerphone, whether any officers were in the immediate area, or whether Jones heard a voice message prior to

11

the call that it would be recorded. [R. 115, Trans Trial Vol. 5, PageID# 27-30].

Jones was prejudiced by the playing of the tape. The tape contains his statements regarding the robberies. Detective Dean testified that information had not been publicly released until after Jones' arrest. [R. 115, Trans. Trial Vol. 5, PageID# 1276]. The prejudicial impression to the jury is that Jones could only have knowledge of the robberies because he committed them. As a result, the district court erred when it allowed the tape to be played. *See Collins, supra*.

IV.  THE DISTRICT COURT ERRED WHEN IT OVERRULED JONES' MOTION FOR A MISTRIAL AFTER PROCEEDING WITHOUT SWEARING IN THE JURY.

Whether a district court erred in proceeding with a jury trial without swearing the jury is a question of law that this court reviews de novo. *U.S. v. Little Dog*, 398 F.3d 1032, 1036 (8th Cir. 2005). There is no dispute that to do so is plain error. *Id*. However, that error is harmless unless prejudice is shown. *Id*.

The timing of the swearing in of a jury is critical because that is the point where the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution attaches. *See e.g. Crist v. Bretz* (1978), 437 U.S. 28, 38, 98 S. Ct. 2156 (1978). It is commonly understood that the swearing in is the beginning of the "actual trial" and it is where the jurors are formally entrusted with the obligation to apply the law. *U.S. v. Padilia*, 639 F.3d 892, 897 (9th Cir. 2011).

Jones moved for a mistrial after the district court noted that the jury had not been sworn. [R. 112, Trans Trial Vol. 2, PageID# 884]. Opening arguments were completed but no witnesses were called. [*Id.*, PageID# 885].

Jones was prejudiced in that the government was able to summarize its evidence and prejudice the jurors to its favor. As Jones noted in his opening statement, the government was able to repeatedly influence the jury that Jones was the bank robber. [R. 121, Trans. Openings, PageID# 1522]. For example, it implied his guilt by stating that he was found wearing a wig because, "obviously, he's wanted for bank robbery." [R.121, Trans. Opening, PageID# 1519].

A defendant benefits from the jury's sworn obligation particularly where there are complex questions of law and indeterminate evidence. *See*

13

*U.S. v. Turrietta*, 696 F.3d 972, 984-85 (10th Cir. 2012). This case contained both complex questions of law and indeterminate evidence. For example, the case included multiple banks including an additional, uncharged, robbery in Indiana, cell phone location data, and multiple victims. Jones was entitled to having the entire case heard by a properly sworn jury. *See id*.

As a result, Jones was prejudiced by the trial court's decision overruling his motion for a mistrial.

## CONCLUSION

WHEREFORE, Jones prays that this court will vacate his conviction.

>                    RESPECTFULLY SUBMITTED
>
>
>                    s/ Christopher Bazeley
>                    Christopher Bazeley
>                    Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) as it contains fewer than 1,100 words, excluding the corporate disclosure statement, table of contents, table of citations, statement in support of oral argument, any addendum, and certificates of counsel. Certification is based on the word count function of Microsoft Word, the word processing system used in preparing this brief.

s/ Christopher Bazeley

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this brief was filed electronically with the Clerk of Courts for the Sixth Circuit Court of Appeals. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail.

s/ Christopher Bazeley

# ADDENDUM 1

## Designation of Relevant Documents

| R. | Page ID# Range | Description |
|---|---|---|
| 75 | 348-386 | Trans. O'Daniel Vol. 2 |
| 77 | 390-424 | Trans. O'Daniel Vol. 1 |
| 83 | 481-535 | Trans. Daubert |
| 108 | 700-807 | Trans. Trial. Vol. 3B |
| 109 | 808-869 | Trans. Trial Vol. 4A |
| 112 | 883-1060 | Trans. Trial Vol. 2 |
| 113 | 1061-1146 | Trans. Trial Vol. 3A |
| 115 | 1248-1461 | Trans. Trial Vol. 5 |
| 121 | 1516-1528 | Trans. Openings |