NOT RECOMMENDED FOR PUBLICATION

No. 23-5071

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 9, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) ) ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE WESTERN DISTRICT OF |
| SALVADOR ABDUL JONES, | ) KENTUCKY |
| | ) |
| Defendant-Appellant. | ) |

O R D E R

Before: SUTTON, Chief Judge; CLAY and DAVIS, Circuit Judges.

Salvador Abdul Jones, proceeding through counsel, appeals his judgment of conviction and sentence. The parties do not request oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the reasons discussed below, the judgment is affirmed.

After a five-day trial, a jury found Jones guilty of five counts of bank robbery, each in violation of 18 U.S.C. § 2113. He was sentenced to serve concurrent terms of 210 months in prison for each conviction followed by three years of supervised release and ordered to pay $8,126 in restitution.

On appeal, Jones argues that (1) insufficient evidence was presented to show that the robbed banks were insured by the Federal Deposit Insurance Corporation (FDIC), (2) his motion to strike Detective Tim O'Daniel's testimony should have been granted, (3) audio recordings of calls he made to his wife from jail were privileged marital communications that were improperly admitted, and (4) his motion for a mistrial based on an unsworn jury was improperly denied.

I. SUFFICIENCY OF THE EVIDENCE

Jones argues that that the government presented insufficient evidence that the robbed banks were insured by the FDIC. He contends that the government witnesses who testified about FDIC insurance had no specific information concerning the FDIC insurance process and whether the insurance was current. He also contends that the banks' FDIC certificates were improperly admitted presumably under Federal Rule of Evidence 803(6) because he lacked an "opportunity to cross examine anyone about" them. And he argues that he was prejudiced by the government's comment during closing arguments that the district court admitted the FDIC certificates because they were valid.

When reviewing a conviction for sufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). We will not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

To secure a conviction for bank robbery under 18 U.S.C. § 2113(a), the government had to prove that Jones, by intimidation, took money from a bank that was insured by the FDIC at the time of the robbery. 18 U.S.C. § 2113(a), (f); *United States v. Sandles*, 469 F.3d 508, 513 (6th Cir. 2006); *United States v. Cork*, 69 F. App'x 733, 736 (6th Cir. 2003) (per curiam). Jones challenges only the FDIC-insured element of his convictions.

In support of this element, the government presented each bank's FDIC certificate and testimony from bank employees. Dekisha Kinnison, a U.S. Bank branch manager, testified that U.S. Bank posted signs indicating that it was FDIC insured at various places inside the bank, but she had no personal knowledge of the FDIC insurance process or when the bank obtained FDIC

insurance. Justin Miracle, another branch manager, testified that U.S. Bank posted signs indicating that it was FDIC insured and that he saw the bank's report showing how much it paid for FDIC insurance, but he did not prepare that report. Cynthia Mulhall, a market operations analyst for U.S. Bank, testified that U.S. Bank is insured by the FDIC and explained that FDIC insured means that the bank's money "is insured up to a certain amount." The government offered the FDIC certificates for admission as certified business records under Rule 803(6). Over Jones's objection, the district court concluded that the certificates were admissible under Federal Rule of Evidence 902(4) as self-authenticating documents because they were "certified as correct by a person authorized to make the certification."

From the evidence presented, the jury could reasonably infer that the banks were FDIC insured when they were robbed. Testimony from a bank's branch manager and the introduction of the bank's FDIC certificate is sufficient to prove the bank's FDIC-insured status, even if the manager lacks "personal knowledge that the premiums were paid" at the time of the robbery. *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975). True, no witnesses testified that the banks' FDIC insurance was current. The FDIC certificate for Fifth Third Bank is dated November 14, 2019, and the FDIC certificate for U.S. Bank is dated August 9, 2001. The banks were robbed in 2021. But "testimony that a bank was insured by the FDIC at the time of trial, coupled with an FDIC certificate of insurance that pre-dated the robbery, [is] sufficient to prove a bank's insured status at the time of the robbery." *United States v. Pacheco*, 466 F. App'x 517, 524 n.3 (6th Cir. 2012) (citing *Rowan*, 518 F.2d at 693); *see United States v. Wood*, 780 F.2d 555, 557 (6th Cir. 1986) (per curiam). Moreover, an FDIC certificate "is an admissible business record" that is sufficient proof of a bank's FDIC-insured status. *United States v. Riley*, 435 F.2d 725, 726 (6th Cir. 1970); *see also Rowan*, 518 F.2d at 693. Business records are non-testimonial such that their admission at trial does not violate the Confrontation Clause. *See United States v. Smith-Kilpatrick*, 942 F.3d 734, 740 (6th Cir. 2019).

Jones relies on *Sandles* to support his contention that the admission of the banks' FDIC certificates was improper because he was not able to cross-examine anyone about them. *Sandles*

held that an FDIC official's affidavit could not establish the FDIC-insured status of a bank because it violated the defendant's confrontation rights. 469 F.3d at 515-17. But here, no affidavit was presented to establish the FDIC-insured status of the banks. Unlike the affidavit in *Sandles*, the FDIC certificates in Jones's case were not created for use at trial but are non-testimonial business records. *See Smith-Kilpatrick*, 942 F.3d at 740; *Rowan*, 518 F.2d at 693; *Riley*, 435 F.2d at 726.

Finally, Jones's argument that he was prejudiced by the government's FDIC-related comment during its rebuttal closing argument does not warrant reversal of his convictions. During closing, defense counsel argued that the FDIC-insured element of bank robbery was not proved beyond a reasonable doubt. He argued that no witness testified about the banks' FDIC insurance and that the banks' FDIC certificates were admitted into evidence over objection without cross-examination. In rebuttal, the government argued that the FDIC certificates could be admitted into evidence without witness testimony because they were valid certificates, bearing gold seals. Although the government's comment that "if it wasn't valid, the Court wouldn't have let it in," was arguably improper, the comment did not draw an objection from the defense, was responsive to defense counsel's argument that the FDIC certificates were improperly admitted without witness testimony and cross-examination, and was not so flagrant as to warrant reversal of Jones's convictions. *See United States v. Hall*, 979 F.3d 1107, 1119-21 (6th Cir. 2020).

## II. MOTION TO STRIKE TESTIMONY

Jones argues that his motion to strike O'Daniel's testimony was improperly denied. According to Jones, "the district court *sua sponte* interrupted O'Daniel's direct testimony when [the district court] felt that it became 'very hazy.'" This occurred after the district court had told the prosecutor to help O'Daniel "sort out" his testimony and after it had attempted to clarify O'Daniel's testimony about computer files. Jones argues that interrupting O'Daniel's testimony prevented the jury from observing O'Daniel's "confusion and uncertainty" and limited his ability to discredit O'Daniel through cross-examination. Jones further contends that the interruption permitted the prosecutor to rehabilitate and clarify O'Daniel's testimony.

"[T]he district court has a 'gatekeeping role' in screening expert testimony to ensure that only reliable testimony and evidence go to the jury." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). We review for an abuse of discretion a district court's ruling on the admissibility of expert testimony. *United States v. Sammons*, 55 F.4th 1062, 1072 (6th Cir. 2022). An abuse of discretion occurs if the court makes "errors of law or clear errors of factual determination." *United States v. Daneshvar*, 925 F.3d 766, 775 (6th Cir. 2019) (quoting *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006) (quotation omitted)).

The prosecutor called O'Daniel to testify about cell site location information (CSLI). He was not identified as an expert witness before trial. Jones objected to O'Daniel's testimony on direct examination concerning a computer software program called TraX that O'Daniel used to determine Jones's physical location based on the approximate location of his cell phone in conjunction with the actual location of cell phone towers. While discussing the objection during a bench conference, the prosecutor told the district court that O'Daniel would testify about the locations where Jones's cell phone pinged with the help of a PowerPoint presentation. In response, the district court said:

> I think we should press pause and let this guy - - I mean, I would - - if you want to cross him now, you can, but I would rather just pause, and then when it's time for a break, have this guy take the stand, and we can just talk in plain English outside the earshot of the jury about what he knows and what he doesn't know.
>
> But some of this is very hazy, and I don't think I'm in a position yet to rule one way or another on the admissibility or objections without hearing, in more detail, what he knows and what he doesn't know, and how this all operates.

Jones objected "to doing anything that is going to change where we are right now," suggesting that cross-examination was meant to expose a witness who is "flustered and appears unsure." But the district court did not think that O'Daniel was flustered, and it informed Jones that because his objection was not really clear, the parties would need to discuss the matter outside of the jury's presence before the court could rule on it. It also admonished the prosecutor not to coach O'Daniel during the break.

Outside the presence of the jury and O'Daniel, the district court and counsel discussed Jones's objection to O'Daniel's CSLI testimony, and the need for a *Daubert* hearing to allow counsel to explore O'Daniel's potential qualification as an expert witness under Federal Rule of Evidence 702 so they would "all understand better what he did and didn't do, and what anyone else may have done or what any software program may have done before he testifies about what he learned from the - - what he learned from the software," ultimately deciding to revisit the matter the next day. When Jones moved to exclude O'Daniel's entire testimony, the district court denied the motion, finding no reason to exclude the testimony before conducting the *Daubert* hearing. Jones agreed with the district court's suggestion to revisit the matter the next day.

The next morning, the district court conducted a *Daubert* hearing. Initially, Jones noted several objections. First, Jones objected to the break in O'Daniel's direct examination, arguing that O'Daniel "was floundering, he was flustered and certainly not giving effective testimony" and that the overnight break allowed him to regroup and testify more effectively. Second, Jones objected procedurally to the admission of O'Daniel's expert testimony because the government did not disclose any experts before trial. The district court overruled both objections. The district court found no error or prejudice resulting from the break in O'Daniel's testimony so that a *Daubert* hearing could be conducted to properly address Jones's own objection, noting that *Daubert* hearings are conducted outside the jury's presence and are necessary to determine if a witness qualifies as an expert. The district court found O'Daniel's disclosure as an expert inefficient but not procedurally erroneous, noting that the court raised the expert-testimony issue at the final pretrial conference but that neither counsel thought that a *Daubert* hearing was necessary until after Jones objected to O'Daniel's testimony on confrontation grounds.

After the *Daubert* hearing, the district court granted Jones's objection to exclude O'Daniel's testimony "based on TraX software" and required the government to provide Jones with a summary of O'Daniel's proposed testimony without the TraX software information by the end of the day. Both counsel agreed with that procedure. At the end of the day, the government provided the district court and Jones with the summary, and another hearing was conducted. Jones

did not have any specific objections to O'Daniel's proposed testimony as pared down to exclude the TraX software information. The following day, outside the jury's presence, Jones objected to O'Daniel resuming his testimony after having an opportunity to talk with the government about his pared-down testimony. The district court recognized the unusual situation presented—stopping O'Daniel's testimony and paring it down after Jones's objection—in the absence of a pre-trial expert disclosure or *Daubert* challenge. But consistent with Federal Rule of Criminal Procedure 16 and to provide Jones with notice of O'Daniel's pared-down testimony, the district court reminded Jones of its prior acknowledgement that the government would need to communicate with O'Daniel, limited to preparation of a summary of his pared-down testimony, and its admonishment to avoid any coaching. Thereafter, the district court admitted O'Daniel's testimony as an expert witness under Rule 702 with the discussed limitations. The jury was called back in, and the government resumed O'Daniel's direct examination. Afterwards, Jones cross-examined O'Daniel.

Before discussing jury instructions, Jones moved to strike O'Daniel's entire testimony and supporting exhibit, arguing that O'Daniel did not qualify as an expert witness and that Jones was prevented from fully cross-examining O'Daniel because of the district court's exclusion of testimony related to the TraX software. The district court denied Jones's motion to strike. It reminded Jones that O'Daniel was qualified as an expert, that his testimony was substantially limited after the *Daubert* hearing, and that O'Daniel's testimony based on the TraX software was excluded in response to his objection. It further found that the testimony was properly limited given applicable case law and that Jones's cross-examination was effective given those limitations.

The record shows that the district court did not sua sponte interrupt O'Daniel's testimony because it was "hazy" but instead that O'Daniel's testimony was halted when Jones objected to it. The district court's "hazy" comment appears to refer to both the nature of Jones's objection and the admissibility of O'Daniel's testimony. Jones does not point to any portion of O'Daniel's testimony that was confused or uncertain. Nor does he show how he was prevented from discrediting O'Daniel through cross-examination. When O'Daniel's testimony resumed after the

*Daubert* hearing, Jones's cross-examination was not restricted. Moreover, Jones has not shown that the government disregarded the district court's admonishment to limit its conversation with O'Daniel during the break in his testimony to the discussion necessary to prepare a summary of his pared-down testimony. Given the "considerable leeway" that district courts have as gatekeeper of the admission of expert testimony, *see Sammons*, 55 F.4th at 1072 (quoting *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (quotation omitted)), the district court did not abuse its discretion in denying Jones's motion to strike O'Daniel's testimony in its entirety.

### III. JAIL CALLS

Jones challenges the admission of audio recordings of two calls that he made to his wife from jail. He argues that the admission of those calls violated the confidential marital communications privilege. Jones argues that the record fails to show how he "would have been advised that his phone call would have been monitored or recorded" and that Detective Benjamin Dean, who introduced the jail calls, did not testify that Jones was on notice that those calls were not confidential and would be recorded. He contends that the admission of the jail calls was prejudicial because he made incriminating statements during them.

Jones objected to the admission of the jail calls. The district court overruled the objection, finding that the calls were not confidential.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Kettles*, 970 F.3d 637, 642 (6th Cir. 2020). An abuse of discretion occurs if the court makes "errors of law or clear errors of factual determination." *Daneshvar*, 925 F.3d at 775 (quoting *Baker*, 458 F.3d at 517 (quotation omitted)).

> To successfully assert the confidential marital communications privilege, three requirements must be met: (1) at the time of the communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other; and (3) the communication must be made in confidence.

*United States v. Ayala*, 755 F. App'x 499, 507 (6th Cir. 2018) (quoting *United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017)).

Jones takes issue with the third requirement of the marital communications privilege, arguing that his jail calls to his wife were confidential and that the district court clearly erred in finding otherwise. But the calls were not confidential. At the beginning of each call, the jail phone system warned Jones that his calls were not private, that they would be recorded, and that they might be monitored. After Jones's wife answered each call, the jail system repeated the same message to both parties, warning them that their calls were not private, that they would be recorded, and that they might be monitored. Thus, the record includes direct evidence—the jail calls—that Jones was notified that his jail calls were not confidential and would be recorded. The admission of Jones's jail calls to his wife did not violate the marital communications privilege. *See id.* at 508.

## IV. SWEARING THE JURY

Jones challenges the denial of his motion for a mistrial based on an unsworn jury. He argues that he was prejudiced because the jury was not sworn until after completion of opening statements and the government's opening influenced the jury to find that he committed the bank robberies.

We review for an abuse of discretion the denial of a motion for a mistrial. *United States v. Wellman*, 26 F.4th 339, 352 (6th Cir. 2022). An abuse of discretion occurs if the court makes "errors of law or clear errors of factual determination." *Daneshvar*, 925 F.3d at 775 (quoting *Baker*, 458 F.3d at 517 (quotation omitted)).

The jury should be sworn after voir dire, before the presentation of evidence. *United States v. Martin*, 740 F.2d 1352, 1358 (6th Cir. 1984). It is crucial for the jury to swear "before trial to try all criminal cases well and truly according to the laws of the United States." *Id.*

Here, after both the government and the defense gave their opening statements, the district court realized that the jury had not been sworn. Jones objected and moved for a mistrial. A lengthy discussion ensued during which the district court gave Jones the options of (1) swearing the jury and allowing counsel to repeat their opening statements, or (2) reminding the jury of their instructions the day before and their answers under oath to try the case under the law and evidence

presented. Jones essentially declined both options. The district court asked Jones to explain how he would be prejudiced by swearing the jury after opening statements and before any evidence was presented. Jones could not do so. The district court denied the motion for a mistrial, and the jury was sworn. Before the jury was sworn, the district court reminded the jury of the oath they took at jury selection, advised them that the oath they were about to hear tracked the same obligations, and instructed them that opening statements were not evidence.

The district court did not abuse its discretion when denying Jones's motion for a mistrial. *See Wellman*, 26 F.4th at 352. The jury was sworn after opening statements but before the presentation of any evidence. When sworn, the jury swore to "well and truly try the issues joined between the plaintiff and the defendant and render a true verdict according to the law and evidence," which "is the crucial consideration." *Martin*, 740 F.2d at 1358. Although the opening statements summarized the evidence that would be presented at trial, the jury was instructed that counsel's opening statements were not evidence. On this record, Jones has failed to show that the delayed swearing of the jury warranted a mistrial. *See id.*

For these reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk